IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROBERTO FELICIANO ROLON,

    Plaintiff,

    v.                                          CIVIL NO. 01-2278 (RLA)

ORTHO BIOLOGICS LLC, et al.,

    Defendants.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff, ROBERTO FELICIANO ROLON, instituted this suit seeking damages under tort pursuant to art. 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141 as well as claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12117 and Puerto Rico's counterpart, Act No. 44 of July 2, 1984 ("Act No. 44"), 1 P.R. Laws Ann. §§ 501-511.

Codefendants ORTHO BIOLOGICS LLC and OMJ PHARMACEUTICALS, INC.[1] have filed two motions for partial summary judgment in these proceedings.[2] The first one seeks to dismiss the negligence claims

---

[1] For purposes of this Order we shall refer to defendants collectively as "ORTHO".

[2] The claims asserted as to codefendant JOHNSON & JOHNSON were previously dismissed for lack of in personam jurisdiction. *See,* Partial Judgment (docket No. 87).

**CIVIL NO. 01-2278 (RLA)**                                                    **Page 2**

based on the statutory employer immunity defense[3] whereas the second petitions dismissal of the claims asserted under ADA and Act No. 44.[4]

Plaintiff having failed to respond to the more recent dispositive motion and it appearing that defendants are entitled to the relief requested therein as a matter of law, Ortho's Second Request for Partial Summary Judgment (docket No. **67**) is **GRANTED.**

Accordingly, we shall only address the viability of plaintiff's action sounding in tort in light of the statutory immunity defense raised by ORTHO.

Regarding his negligence claim plaintiff essentially alleges that he suffered damages as a result of his exposure and contamination with sodium metabisulfite, a chemical product utilized at ORTHO's manufacturing plant in the water chlorine removal process.

### RELEVANT FACTS

Plaintiff was hired on September 10, 1990 by ORTHO BIOLOGICS, INC. (now ORTHO BIOLOGICS, LLC) as a regular full-time employee for the position of Apprentice Mechanic, a Level VI position under ORTHO's system of occupational classifications by levels.

At all relevant times ORTHO had a workers' compensation insurance policy issued by the Puerto Rico State Insurance Fund Corporation ("SIF") and was an insured employer thereunder.

---

[3] *See,* Ortho's First Request for Partial Summary Judgment (docket No. 65).

[4] *See,* Ortho's Second Request for Partial Summary Judgment (docket No. 67).

**CIVIL NO. 01-2278 (RLA)**                                         **Page 3**

On July 20, 1991 plaintiff was promoted to the position of Boiler Room Operator, a Level IX position in the Engineering Department.

In or about November 1996 plaintiff was temporarily assigned to the position of Process Mechanic in cross-training.

In March 1997 plaintiff was informed that he was to return to his regular position of Boiler Room Operator inasmuch as his temporary assignment had concluded.

Plaintiff began a series of leaves due to an alleged emotional condition from March 31, 1997 until June 7, 1998. During this time ORTHO granted plaintiff benefits under the Employee Assistance Program, sick leave, SIF, Short Term Disability Plan and Long Term Disability Plan.

On June 5, 1998, almost fifteen (15) months after his absence due to various leaves based on his alleged emotional condition, ORTHO reinstated plaintiff upon his request. Plaintiff was assigned to the position of Boiler Room Operator in the Engineering Department, the same position he held prior to taking his leaves of absence on March 1997.

Inasmuch as plaintiff's position had undergone various changes regarding equipment and procedure during his absence, upon his return plaintiff was informed that he would be subject to a three-month training and evaluation period.

**CIVIL NO. 01-2278 (RLA)**                                                                                            **Page 4**

As a Boiler Room Operator, plaintiff's duties included the cleaning of a sampling area at the boiler room. Pursuant to the new procedures implemented during his absence, this operation required the use of various chemical products, including a chemical known as sodium metabisulfite, which is used for chloride precipitation and elimination from water.

At the end of October 1998 plaintiff started to experience skin irritation or rash in some parts of his body as well as cold symptoms.

On October 27, 1998 plaintiff was examined by DR. RUBEN J. SANTIAGO LUGO, his private Internal Medicine Specialist, who noted that plaintiff suffered from a bronchial condition and was started on respiratory therapy. Rest was recommended until October 30, 1998.

Plaintiff took additional time off the following week as vacation leave and returned to work on November 5, 1998.

On November 5, 1998, upon returning from the sick and vacation leaves, plaintiff was examined at ORTHO's infirmary. Plaintiff informed that he was feeling better and provided the corresponding medical certificate to return to work for which reason he was authorized to return to work.

On November 24, 1998 plaintiff was examined by DR. WILLIAM FELICIANO MORALES, a dermatologist, who noted that plaintiff had a scaly lesion on his inguinal area due to acute contact dermatitis and recommended rest until December 9, 1998. Skin medication was

prescribed and plaintiff instructed to change his laundry detergent. Plaintiff was examined again by DR. FELICIANO MORALES on November 30, 1998 who noted the patient showed no sign of improvement and prescribed additional medication.

On December 3 and 5, 1998 plaintiff was again examined by DR. RUBEN SANTIAGO, his Internist. In his medical certificate DR. SANTIAGO observed that plaintiff had developed a generalized skin rash, fever and weakness and could return to work by December 10, 1998.

On December 10, 1998 plaintiff was examined at ORTHO's Infirmary. At that time plaintiff provided the medical certificates issued by DRS. SANTIAGO and FELICIANO whereupon he was authorized to return to work.

At that point neither plaintiff nor his physicians knew what caused plaintiff's symptoms. Nonetheless, as a precautionary measure, plaintiff was examined at ORTHO's Infirmary and was instructed not to come in contact with sodium metabisulfite.

On January 15, 1999 plaintiff was issued a disciplinary memorandum for his failure to follow the required procedure after an alarm went off. Plaintiff was suspended from January 18 through January 25, 1999 as a disciplinary measure for the aforementioned violation.

On January 27, 1999, upon plaintiff's return from his temporary suspension, he was examined at ORTHO's Infirmary and authorized to

**CIVIL NO. 01-2278 (RLA)**                                                 **Page 6**

return to work. Plaintiff stated that he was feeling better. He was again instructed not to come in contact with sodium metabisulfite.

On March 15 and 19, 1999 plaintiff was examined at ORTHO's Infirmary. At that time plaintiff did not report any incident regarding his rash condition but rather indicated that he was feeling better.

On October 7, 1999 plaintiff was involved in a work-related accident when a tank containing sodium metabisulfite fell and the chemical spilled in the area where plaintiff was working at ORTHO's manufacturing site.

ORTHO referred plaintiff to the SIF for physical symptoms which appeared to be related to his exposure to sodium metabisulfite during his occupational accident of October 7, 1999.

On November 16, 1999 the SIF determined that plaintiff suffered from allergic rhinofaringitis and contact dermatitis due to inhalation of sodium metabisulfite gases. He started receiving medical treatment for those conditions with the SIF while continuing to work.

On December 15, 1999 the SIF examined plaintiff and decided to place him on leave of absence from work while continuing to receive medical treatment with the SIF for his allergic rhinofaringitis and contact dermatitis due to inhalation of sodium metabisulfite gases.

On January 26, 2000 the SIF examined plaintiff and decided to authorize his return to work while continuing to receive treatment by

the SIF for allergic rhinofaringitis and contact dermatitis due to inhalation of sodium metabisulfite gases.

On February 29, 2000 the SIF recommended plaintiff's relocation to an open area without the presence of any irritating agents related to sodium metabisulfite.

Upon his return plaintiff was assigned to a working area outside the boiler room as an assistant to the mechanics in the Maintenance Department.

Plaintiff never appealed the SIF's determinations as to his alleged conditions related to his contact with sodium metabisulfite.

On September 25, 2000 plaintiff suffered a work-related accident unrelated to sodium metabisulfite and involving a scaffold whereby he injured his back. As a result thereof plaintiff never returned to work at ORTHO but rather received treatment from the SIF as well as ORTHO's benefits under its Short and Long-Term Disability Plans.

## SUMMARY JUDGMENT

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir.

**CIVIL NO. 01-2278 (RLA)**                                                  **Page 8**

1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law. Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995).

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" Poulis-Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004) (citing Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995)).

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). *See also*, Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in

**CIVIL NO. 01-2278 (RLA)**                                                    **Page 9**

credibility assessments."); Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment."); Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); Molina Quintero v. Caribe G.E. Power Breakers, Inc., 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment". Cruz-Baez v. Negron-Irizarry, 360 F.Supp.2d 326, 332 (D.P.R. 2005) (citations and internal quotation marks omitted).

    In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. at 256-257, 106 S.Ct. 2505, 91 L.Ed.2d 202; Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2000); Grant's Dairy v. Comm'r of Maine Dep't of Agric., 232 F.3d 8, 14 (1st Cir. 2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 412 (1st Cir. 2000); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581

**CIVIL NO. 01-2278 (RLA)**                                                                    **Page 10**

(1st Cir. 1994); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

### STATUTORY EMPLOYER

The Puerto Rico Workmen's Accident Compensation Act ("PRWACA"), Act No. 45 of April 18, 1935, as amended, 11 P.R. Laws Ann. §§ 1-52, was enacted to address the serious economic and social maladies resulting from work-related injuries to employees. The statute's goal was to provide a fair, swift and equitable compensation mechanism to redress the damages befalling employees due either to accidents at work or occupational illnesses. It is essentially a remedial statute geared at providing employees with specific medical and economic benefits. In order to meet its objective, the PRWACA establishes a rapid compulsory insurance scheme providing medical treatment, payment of benefits and disability compensation through the SIF to assist employees affected by work-related accidents or otherwise suffering from health conditions related to their employment. Guzman-Cotto v. E.L.A., 2002 TSPR 59.

An injured employee need not establish his employer's liability in order to receive SIF benefits. Lebron-Bonilla v. E.L.A., 2001 TSPR 145, nor is the fact that his injuries resulted from his own negligence a bar to his SIF claim. Thus, an injured employee is entitled to SIF relief regardless of who was responsible for his condition. Guzman-Cotto. In exchange thereof, employers are immune from suits seeking to vindicate those damages. "This quid pro quo is

**CIVIL NO. 01-2278 (RLA)**                                                              **Page 11**

the central axis of the compulsory insurance scheme." <u>Sevilla-Rivera v. Municipio de Toa Alta</u>, 2003 TSPR 109; <u>Lebron-Bonilla</u>.

Thus, as a trade-off for the guaranteed benefits provided under the statute the employees waive any potential claims against their employers and the PRWACA[5] confers absolute immunity to employers who insure their workmen. <u>Guzman-Cotto</u>.

The Supreme Court has reiterated that the exclusivity of the remedy provided by the PRWACA is absolute provided the employer is insured. <u>Hernandez Sanchez v. Bermudez & Longo</u>, 99 TSPR 156. *See also*, <u>Lebron-Bonilla</u> (PRWACA provides the employer immunity and the exclusiveness of remedy provided the claim arises from injuries, sickness or death covered by the statute); <u>Hernandez Sanchez</u> (pursuant to PRWACA workers who sustain injuries, become sick or die as a result of work-related conditions and whose employers are insured under the statute may not sue their employers but rather relief is limited to SIF remedies.)

An injured worker receiving SIF benefits may not pursue a claim against his employer for damages sustained regardless of the degree of negligence attributable to his employer, including gross negligence. <u>Guzman-Cotto</u>; <u>Hernandez Sanchez</u>.

The Puerto Rico Supreme Court has recognized an exception to the aforementioned statutory employer immunity allowing for suits in situations where the injuries complained of by the employee result

---

[5] *See,* 11 P.R. Laws Ann. § 21.

from certain employer's intentional acts. Guzman-Cotto; Lebron-Bonilla; Hernandez Sanchez. *See also*, Soc. de Gananciales v. Royal Bank de P.R., 98 TSPR 36 (employer's intentional acts or discrimination that breaches clear public policy excepted from immunity); Odriozola v. Superior Cosmetic Distrib. Corp., 116 D.P.R. 485 (1985) (suit for worker's damages resulting from employer's intentional acts, specifically, wrongful discrimination in employment not barred by PRWACA.)

However, this exception has been sparsely applied. *See, i.e.*, Reeser v. Crowley Towing & Transp. Co., Inc., 937 F.Supp. 144, 149 (D.P.R. 1996) (failure to repair defective door despite plaintiff's warnings does "not rise to the level of intentional acts required to qualify within the 'intentional tort' exception to the employer immunity doctrine.")

Specifically, it has been held that gross negligence by failing to providing a safe working environment as required by statute does not authorize a suit against a SIF insured employer. Guzman-Cotto. *See also*, Vda. de Costas v. P.R. Olefins, 107 D.P.R. 782 (1978) (breach of legal duty to provide safe working conditions does not eliminate employer's immunity).

In Guzman-Cotto several employees developed respiratory tract conditions as a result of a remodeling carried out in their working area whereby they were exposed to noxious and insalubrious environmental conditions. Upon plaintiffs' request, the pertinent

division of the Puerto Rico Department of Labor[6] carried out an inspection of the premises and confirmed the presence of bacteria, fungus and other microorganisms detrimental to the employees' health. The inspection report concluded that the building at issue was a "sick building" which required that corrective measures be taken to address the detected environmental problems. Faced with their employer's inaction despite the aforementioned findings the employees sought damages alleging gross negligence in failing to implement and comply with federal and state occupational health and safety regulations.

Plaintiffs argued that the idleness shown by their employer and its disregard to the legal duty to provide a safe and fit work environment constituted a pattern of intentional conduct which divested the employer from its immunity.

The Supreme Court acknowledged the employer's legal duty to provide a safe working environment to all its employees but once again reiterated the principle that violations to the statutorily imposed security and health norms does not allow for a claim against an insured employer.

Similarly, in <u>Hernandez Sanchez</u> the employer was sued due to its failure to adopt minimum security standards to protect the lives of

---

[6] *See*, Occupational Safety and Health Act, Act No. 16 of August 5, 1975, 29 P.R. Laws Ann. §§ 361-362. This office is Puerto Rico's counterpart to the federal Occupational Safety and Health Administration (OSHA).

**CIVIL NO. 01-2278 (RLA)**                                                                 **Page 14**

its employees. The Puerto Rico Supreme Court ruled that gross negligence due to failure to provide a safe workplace in accordance with basic federal and local standards did not constitute intentional conduct and hence, was not an exception to the employer's immunity.

The underlying rationale for the exception carved out by the Puerto Rico Supreme Court is that the PRWACA protection should not be extended to those intentional acts which are unrelated to the "inherent" work relationship such as age-based discrimination, Odriozola, or quasi-criminal and criminal acts which result in injury to an employee, Benito-Hernando v. Gavilanes, 849 F.Supp. 136, 140 (D.P.R. 1994).

In the case before us it is uncontested that at all relevant times ORTHO was an insured employer under the SIF pursuant to the provisions of the PRWACA and that the injuries complained of by plaintiff were caused by his exposure to sodium metabisulfite while working for ORTHO. Therefore, by operation of law ORTHO is entitled to the immunity provided by law.

Plaintiff attempts to circumvent ORTHO's statutory immunity by alleging that defendants "intentionally exposed" plaintiff sodium metabisulfite despite knowing of its potential health hazards.

Defendants reject plaintiff's assertion regarding a hazardous working environment alleging that they complied with all applicable

**CIVIL NO. 01-2278 (RLA)** **Page 15**

measures to ensure a safe working milieu.[7] Further, they contend that in view of the legal precedent their acts could be deemed negligent at best.

As previously noted, the Puerto Rico Supreme Court has explicitly limited the immunity exception to those cases where the evidence denotes a specific intent to cause a harm which falls outside the scope of the "inherent" working relationship.

Even taking plaintiff's assertions as true, we find no substantial difference between the allegations made in this case and those previously considered and rejected by the Puerto Rico Supreme Court. As in Guzman-Cotto, plaintiff in this action avers that his employer: (1) failed to comply with applicable federal and state safety work standards and (2) failed to take corrective measures despite having knowledge of the potential for serious health risks posed to its employees.

Thus, we find no grounds present in this case for departing from clear Puerto Rico Supreme Court precedent on a local law issue. The nature of the conduct charged in this case forms part and parcel of the intrinsic work relationship between the parties which PRWACA was enacted to address.

Accordingly, we find that ORTHO is entitled to the immunity provided by the PRWACA regarding plaintiff's claim for his alleged

---

[7] Given our ruling today we find no need to address this particular argument regarding the adequacy of the measures taken.

**CIVIL NO. 01-2278 (RLA)**                                                                 **Page 16**

work-related conditions resulting from exposure to sodium metabisulfite.

### CONCLUSION

Based on the foregoing ORTHO's First Request for Partial Summary Judgment (docket No. **65**)[8] is **GRANTED** and plaintiff's claim for his alleged work-related conditions resulting from exposure to sodium metabisulfite is hereby **DISMISSED**.

It is further ORDERED that Ortho's Second Request for Partial Summary Judgment (docket No. **67**) is **GRANTED** and plaintiff's disability discrimination and failure to provide reasonable accommodation claims asserted under ADA and Act No. 44 are hereby **DISMISSED**.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 14th day of December, 2005.

                                          S/Raymond L. Acosta
                                          RAYMOND L. ACOSTA
                                  United States District Judge

---

[8] *See,* Plaintiff's Response (docket No. **75**) and Ortho's Reply (docket No. **82**).